IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| STEPHEN L. LAFRANCE HOLDING INC., et al., | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| NATIONAL MILK PRODUCERS FEDERATION, et al. | : | NO. 12-70 |


MEMORANDUM

McLaughlin, J.                                          July 31, 2012

        This case is a putative class action of direct

purchasers of milk products in which the plaintiffs claim that

they purchased those products at supracompetitive prices.  The

plaintiffs allege that the defendants,[1] which are trade

associations and dairy cooperatives, engaged in a "herd

retirement" scheme designed to reduce the supply of raw farm milk

and increase its market price.  The defendants have moved to

transfer this action to the United States District Court for the

Northern District of California, asserting that the case should

be consolidated with three cases pending there that involve

substantially similar allegations.  The Court will grant the

defendants' motion.

_____

        [1] The defendants are National Milk Producers Federation,
Cooperatives Working Together, Dairy Farmers of America, Land
O'Lakes, Inc., Dairylea Cooperative Inc., Agri-Mark, Inc.,
Prairie Farms Dairy, Inc., Turner Dairy Holdings, LLC, and Hiland
Dairy Foods Company, LLC.

I.    <u>Facts and Procedural Background</u>[2]

The plaintiffs are Stephen L. LaFrance Holding Inc., a holding company that owns retail drug stores, and its wholly owned subsidiary, Stephen L. LaFrance Pharmacy, Inc., which purchases and sells fluid milk and other fresh dairy products. Their corporate offices are located in Pine Bluff, Arkansas. They filed this action on behalf of themselves and a class of others similarly situated.  Am. Compl. ¶¶ 23-24, 113.

The plaintiffs allege that from 2003 to 2010, the defendants, through an unincorporated association called Cooperatives Working Together ("CWT"), induced dairy farmers to prematurely remove dairy cows from production in exchange for cash payments funded by dues the cooperatives paid to CWT.  The "purpose and effect" of the herd retirement program was to "artificially inflate the price paid by direct purchasers of fluid milk products and other fresh dairy products . . . ."  Am. Compl. ¶¶ 1, 3-5.  They bring a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1.

At the time the complaint in this action was filed, three other cases were pending against the same defendants in the

---

[2] The facts in this section are drawn, where undisputed, from the allegations of the Amended Complaint in this action and the evidence submitted in support of the Motion to Transfer.  The plaintiffs' opposition brief did not include any declarations or documentary evidence.

Northern District of California (the "California Actions").[3]

Those cases are indirect purchaser class actions; the plaintiffs

in those cases are individual consumers and non-profit corporate

purchasers of milk.  The plaintiffs in the California Actions

allege that the defendants inflated the price of raw farm milk

through coordinated herd retirements, resulting in increased

prices of "milk and other fresh milk products" at the consumer

level.  They bring claims for unjust enrichment and under a

variety of state antitrust and unfair competition laws.  First

Am. Class Action Compl. at ¶¶ 9-10, 34-37, 120-48, Edwards v.

Nat'l Milk Producers Fed'n, No. 11-4766 (N.D. Cal. Oct. 28,

2011).

        The California Actions were consolidated before Judge

White in the Northern District of California for all purposes by

stipulation of the parties and approval by that court.

Stipulation and Order to Consolidate Cases and Combine Briefs and

Aggregate Page Limitations, Edwards v. Nat'l Milk Producers

Fed'n, No. 11-4766 (N.D. Cal. Dec. 19, 2011).

        The plaintiffs in this action moved the Judicial Panel

on Multidistrict Litigation ("JPML") to consolidate the case with

the California Actions, asserting that all four cases "arise out

---

[3] The California Actions are Edwards v. Nat'l Milk Producers
Fed'n, No. 11-4766 (N.D. Cal.); Robb v. Nat'l Milk Producers
Fed'n, No. 11-4791 (N.D. Cal.); Boys & Girls Club of the East
Valley v. Nat'l Milk Producers Fed'n, No. 11-5253 (N.D. Cal.).

of the same conduct and make similar claims."  Pls.' Mot. for

Transfer & Coordination of Related Actions to the E.D. Pa.

Pursuant to 28 U.S.C. § 1407 ¶ 1, MDL No. 2340 (Jan. 10, 2012).

The defendants responded by supporting centralization of the

actions but requested that it be done in the Northern District of

California.  The JPML denied the motion, asserting that given the

limited number of actions, creating a MDL was not necessary.

Order Denying Transfer, In re Fresh Dairy Prods. Antitrust

Litig., MDL No. 2340 (J.P.M.L. Apr. 17, 2012).

The defendants moved to dismiss the claims against them

in the California Actions, asserting, among other things, that

the Capper-Volstead Act, 7 U.S.C. § 292, renders their conduct

immune from antitrust liability.  A hearing was scheduled on that

motion for July 27, 2012.  Judge White vacated the hearing and

granted the plaintiffs leave to amend in the California Actions

based on their assertion that they could present additional

allegations of predatory conduct.  Order Regarding Amended

Complaint, Edwards v. Nat'l Milk Producers Fed'n, No. 11-4766

(N.D. Cal. July 19, 2012).

On June 18, 2012, the defendants also moved to dismiss

the complaint in this action, largely based on the same arguments

presented to Judge White in the California Actions.  The Court

denied that motion as moot when the plaintiffs filed their

amended complaint.  Order of July 17, 2012 (ECF No. 68).

II.  Analysis

        The defendants move under Section 1404(a) to transfer

the action from this Court to the United States District Court

for the Northern District of California, asserting that it is a

more convenient forum.  The factors relevant to 1404(a) transfer

counsel in favor of transferring the action to that court.

        Under 28 U.S.C. § 1404(a), "[f]or the convenience of

parties and witnesses, in the interest of justice, a district

court may transfer any civil action to any other district or

division where it might have been brought or to any district or

division to which all parties have consented."[4]  The Court is to

consider the factors enumerated in the statute as well as several

additional private and public interest factors.  Jumara v. State

Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995).[5]

---

[4] The parties do not dispute that venue would be proper in
the Northern District of California because a substantial portion
of the events or omissions giving rise to this claim occurred
there.  See 28 U.S.C. § 1391(b).

[5] The plaintiffs misstate the standard applicable to the
instant motion, asserting that the one articulated in In re
United States of America, 273 F.3d 380, 387 (3d Cir. 2001)
governs here.  That case involved a dispute over a motion to
transfer a criminal action under Fed. R. Crim. P. 21(b), and the
ten factors the Court of Appeals considered appropriate on such
motions were drawn from Platt v. Minnesota Mining & Mfg., 376
U.S. 240 (1964).  Although the In re United States court noted
the similarities in Section 1404(a) and Criminal Rule 21(b)--both
refer to party and witness convenience--transfer in the instant
case is governed by the factors articulated in Jumara.  The Court
addresses the plaintiffs' arguments under the Platt factors where
they are relevant to the Jumara analysis.

The private interest factors that a court considers

include:

>    [1] [The] plaintiff's forum preference as
>    manifested in the original choice; [2] the
>    defendant's preference; [3] whether the claim
>    arose elsewhere; [4] the convenience of the
>    parties as indicated by their relative
>    physical and financial condition; [5] the
>    convenience of the witnesses--but only to the
>    extent that the witnesses may actually be
>    unavailable for trial in one of the fora; and
>    [6] the location of books and records
>    (similarly limited to the extent that the
>    files could not be produced in the
>    alternative forum).

Id. at 879 (internal citations omitted).  The public interest

factors include:

>    [1] [T]he enforceability of the judgment;
>    [2] practical considerations that could make
>    the trial easy, expeditious, or inexpensive;
>    [3] the relative administrative difficulty in
>    the two fora resulting from court congestion;
>    [4] the local interest in deciding local
>    controversies at home; [5] the public
>    policies of the fora; and [6] the familiarity
>    of the trial judge with the applicable state
>    law in diversity cases.

Id. at 879-80 (internal citations omitted).  The defendant bears

the burden of proving that transfer is needed.  Id.


     A.    Private Interest Factors

     The first private interest factor is neutral or weighs

slightly against transfer.  Although a plaintiff's choice of

forum is generally accorded deference, where a plaintiff is not

resident in the forum, that choice is entitled to less weight,

particularly where the events giving rise to the litigation did

not occur in the forum.  The plaintiffs here do not allege that

they purchased milk in Pennsylvania or that they purchased milk

that came from Pennsylvania.  They are Arkansas entities without

a clear connection to the Eastern District of Pennsylvania.

Their choice of forum is thus accorded less deference.

       The defendants' preferred forum is the Northern

District of California, as evidenced by the instant motion and

the defendants' opposition to the JPML Motion to Transfer, which

also requested consolidation of the California Actions with the

instant case in that forum.  Interested Party Resp. of Defs.' to

Pls.' Mot. for Transfer & Coordination of Related Actions to the

E.D. Pa. Pursuant to 28 U.S.C. § 1407 at 1, MDL No. 2340 (Feb. 1,

2012).  The second factor thus favors transfer.[6]

       The third factor also favors transfer.  Whether herd

retirements, the coordination thereof, or the purchase of raw

milk products is viewed as the basis for the plaintiffs' claims

---

       [6] The plaintiffs argue in opposition that given the location
of corporate headquarters of the defendants and of their counsel,
it would be more inconvenient for the defendants to litigate in
San Francisco than in Philadelphia.  Even accepting this for
purposes of the motion, the plaintiffs' argument overlooks the
fact that the defendants and their counsel already are litigating
in San Francisco in the California Actions, and therefore any
added inconvenience would be marginal.  But see 15 Charles A.
Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice
and Procedure §§ 3849-50 (3d ed. 2007) (where both parties are
nonresidents, party convenience given "considerably less
emphasis"; similarly, counsel convenience "given very little
weight").

here, California has a greater connection to the factual nexus of
this action.  The defendants have produced evidence related to
the six herd retirements preceding the filing of the complaint in
this matter, from 2008 to 2010.[7]  Of the herd retirements in
those years, California retirements represented 27.7% of the
total, while Pennsylvania retirements represented 1.9%.  Also
during that period, of the twenty-two meetings regarding CWT held
by the National Milk Producers Federation, one took place in
California, none took place in Pennsylvania, and the remainder
took place by telephone or in Virginia, Nevada, Colorado,
Illinois, Texas, or Tennessee.  Decl. of Thomas M. Balmer, Exec.
Vice Pres., Nat'l Milk Producers Fed'n at Exs. A-B, Defs.' Mot.
Ex. 5.   The claims in this matter thus arose largely outside of
this district.

　　　　The parties do not present evidence of their relative
financial conditions and so the fourth factor is neutral.

　　　　The defendants present substantial evidence that the
witnesses likely to testify in this matter--largely employees of
the defendants--would be inconvenienced by having to travel to
Philadelphia to testify in addition to having to testify in the
California Actions, and that most of these witnesses, in addition
to the defendants' books and records, are located outside of
Pennsylvania.  Defs.' Mot. 18-19 & nn.17-19.  These factors are

---

[7] No herd retirements were conducted in 2011 or 2012.

properly considered in the discussion of public interest factors
below, but do not affect the fifth or sixth private interest
factors, which are only relevant if witnesses or books and
records are unavailable in one forum or the other.  The fifth and
sixth private interest factors are, therefore, neutral.

    B.    <u>Public Interest Factors</u>

        The movants concede that the public interest factors
regarding judgment enforceability, public policy, and familiarity
with the relevant law are neutral, and the plaintiffs do not
dispute that characterization.  The remaining public interest
factors favor transfer.

        Substantial practical considerations, including
judicial efficiency and the avoidance of duplicative proceedings,
counsel in favor of transfer.  These factors are particularly
important here because each of the three cases consolidated in
the Northern District of California was filed before the instant
one and involve substantially the same subject matter.[8]  The

---

    [8] The movants urge that the interests of justice counsel
that the Court invoke the "first-filed rule" to grant the motion
to transfer.  Although the typical posture of cases implicating
the first-filed rule involves a request to enjoin a related
proceeding in another district court, the rule has been invoked
to transfer actions involving the same subject matter as an
earlier filed action.  <u>See, e.g.</u>, <u>Transcore, L.P. v. Mark IV
Indus. Corp.</u>, No. 09-2789, 2009 WL 3365870, at *4 (E.D. Pa. Oct.
15, 2009); <u>Villari Brandes & Kline, P.C. v. Plainfield Specialty
Holdings II, Inc.</u>, No. 09-2552, 2009 WL 1845236, at *6 (E.D. Pa.
June 26, 2009); <u>Advanta Corp. v. Visa U.S.A., Inc.</u>, No. 96-7940,
1997 WL 88906, at *2-*3 (E.D. Pa. Feb. 19, 1997) (citing <u>EEOC v.</u>

California Actions allege the same behavior on the part of the

defendants and will therefore require similar discovery.  In the

California Actions, the defendants have challenged the subject

matter jurisdiction of the court, asserting (as they asserted

here with respect to the initial complaint) that the Capper-

Volstead Act vests the Secretary of Agriculture with exclusive

jurisdiction over the dispute.  Resolving these issues together

will be more efficient and inexpensive than resolving them in

separate fora because they will involve testimony from many of

the same witnesses and will permit the defendants to challenge

the claims brought against them in a single forum.

        The plaintiffs argue that because the claims in the

California Actions are state law claims and the plaintiffs are

indirect purchasers, the cases are "entirely different" and

transfer is not warranted.  This argument is unpersuasive

because, as the defendants point out, many of the state law

claims made in the California Actions are brought under statutes

explicitly modeled on the federal antitrust statutes and

interpreted in the same way.  See Defs.' Reply at 5 & nn.10-11

(collecting statutes).  Given Judge White's recent order

permitting the filing of an amended pleading with the expectation

---

Univ. of Pa., 850 F.2d 969, 970 (3d Cir. 1988)).  Although the
Court's ruling here is made under Section 1404(a), the policies
behind the first-filed rule, including avoiding duplicative
litigation, suggest that transfer is appropriate.  See EEOC v.
Univ. of Pa., 850 F.2d at 972.

that it would be challenged in the same way as the prior

pleadings (and in the same way as the original complaint was

challenged here), the procedural posture of the California

Actions will permit the efficient resolution of this action along

with the pending ones.

        The movants also argue that the differences in court

congestion between this forum and the proposed transferee forum

favor transfer.  The defendants point out that this Court has the

highest number of filings per judge and the sixth highest number

of pending cases per judge, and that the proposed transferee

forum ranks twenty-fifth and twenty-ninth in those categories.[9]

Mot. 14-15 (citing United States Courts, Fed. Court Mgmt.

Statistics (Sept. 2011), available at http://www.uscourts.gov/

uscourts/Statistics/FederalCourtManagementStatistics/2011/

District FCMS Profiles September 2011.pdf (last visited July 30,

2012)).  The defendants acknowledge that "weighted filings per

judge," which incorporates the average amount of time required to

resolve the filings pending in a district, is greater in the

Northern District of Cailfornia than here.  These statistics are

subject to competing interpretations regarding court congestion,

---

[9] The plaintiffs argue that the JPML rejected congestion
arguments in denying the defendants' motion to consolidate the
cases as a multidistrict litigation.  This argument neglects the
fact that the standards for transfer under Section 1407 and
Section 1404 are different. See, e.g., In re Am. Fin. Corp.
Litig., 434 F. Supp. 1232, 1234 (J.P.M.L. 1977) (Noting that
"different considerations . . . underlie these two statutes").

and the Court considers this factor as neutral on the instant
motion.

        The defendants assert that California has a strong
local interest in deciding the case as the nation's largest
dairy-producing state.  The plaintiffs respond that Pennsylvania
has a substantial interest in deciding the case because
Pennsylvania is fifth in total milk production and fourth in
total number of cows.  The allegations of this case, however, are
national in character and involve conduct affecting consumers of
dairy products in all states; the case cannot be characterized as
a "local controversy."  The fourth factor is thus neutral.

        The public interest factors favor transfer on the
whole.  The California Actions remain in the pleading stage,
raise near-identical factual issues concerning the conduct of the
defendants, and are challenged as a threshold matter in the same
way.  It would be expeditious to transfer this case to the
Northern District of California to conserve the resources of the
parties, witnesses, and the judiciary.


        An appropriate order will issue separately.